# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DENISE SAMPLES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:12-cv-00099** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **MIDLAND CREDIT MANAGEMENT, INC.;** | ) | |
| **MIDLAND FUNDING, LLC; AND** | ) | |
| **ENCORE CAPITAL GROUP, INC.;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court are two motions filed by the defendants and a conditional request by the plaintiff to file an Amended Complaint. The defendants have filed a Motion to Transfer Venue (Docket No. 20), to which the plaintiffs filed a Response in Opposition (Docket No. 24). The defendants have also filed a Motion for Judgment on the Pleadings or, in the Alternative, Motion to Dismiss ("Motion for Judgment") (Docket No. 7), to which the plaintiff filed a Response in Opposition (Docket No. 14), and the defendants filed a Reply (Docket No. 18). In the plaintiff's Response to the Motion for Judgment, the plaintiff conditionally requests leave to amend her Complaint.

For the reasons stated herein, the defendants' Motion to Transfer Venue will be denied, the defendants' Motion for Judgment on the Pleadings will be granted in part and denied in part, and the plaintiff's request to amend her Complaint will be denied.

## BACKGROUND

On January 23, 2012, plaintiff Denise Samples, who resides in this district, filed the

instant action, in which she alleges that the defendants, Midland Credit Management, Inc.

("MCM"), Midland Funding, LLC ("Midland Funding"), and Encore Capital Group, Inc.

("Encore") (collectively, "defendants"), are liable for violations of the Federal Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(3), 1692(e)(5), and 1692e(10).  (Docket No. 1,

Complaint ("Compl.").)  On January 24, 2012, Samples and another individual, Jenny Brown,

also filed a putative class action ("Class Action") in the Western District of Tennessee against

MCM, Midland Funding, Encore, and the law firm of Hosto, Buchan & Prater, PLLC ("HBP"),

alleging that HBP is directly liable for violations of the FDCPA, 15 U.S.C. § 1692g, and that the

Defendants are vicariously liable for those violations.  (Docket No. 20, Ex. 1, Complaint in

*Brown, et al. v. Encore Capital Grp., Inc., et al.*, Case No. 2:11-cv-02948-SHM-dkv).

## I.        The Instant Lawsuit and the Associated MCM Collection Letter

MCM and Midland Funding are wholly owned subsidiaries of Encore, a company that

acquires debt in default for collection purposes.  The instant lawsuit concerns a single

communication from MCM regarding an alleged outstanding debt by Samples, for which MCM

serviced collection of the debt for an unspecified period of time.  Samples alleges that MCM, by

itself and on behalf of Midland Funding and Encore, sent a letter to her on June 30, 2011,

purporting to advise her of the status of her obligation to pay a debt of $1,260.03 on a past due

account with a third party.  (*See* Ex. 1 to Compl. ("MCM Collection Letter")).  The MCM

Collection Letter was titled "NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW"

(emphasis in original) and stated, in relevant part, as follows:

> Midland Funding LLC recently purchased your CITIFINANCIAL account and
> Midland Credit Management, Inc. ("MCM"), a debt collection company, is the
> servicer of this obligation.

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the time period described on the back of the letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 8-14-2011, we may proceed with forwarding this account to an attorney.

What do you need to do to stop this process from continuing?

    1) Mail in $300.00 and call to set up your remaining payments.
    2) Call us today to see how to qualify for discounts and payment plans.

LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us today: (877) 265-8835.

Sincerely,

Recovery Department
Midland Credit Management, Inc.
(800) 265-8825

The MCM Collection Letter also contained a boxed column on the right side of the letter, which stated as follows:

BENEFITS OF PAYING!

› This may be your last chance to work with us before the account goes to an attorney.

› No additional interest will be charged to your account.

› Get rid of the debt and get on with your life.

*Once your account is paid*,

› All collection calls and letters on this will stop!

› We will notify the credit bureaus the debt is PAID IN FULL.

(Emphases in original.) The first page of the letter also contains a "payment coupon" listing the

"MCM Account No.," the "Original Account No.", and the "Current Balance," along with a notation to make any payment check to "Midland Credit Management, Inc."

Samples alleges that the representations in the MCM Collection letter violate the FDCPA by: (1) falsely representing the meaningful level of attorney involvement in the collections process, in violation of 15 U.S.C. § 1692e(3); (2) threatening to take legal action against the plaintiff without an actual intent to do so, in violation of the 15 U.S.C. § 1692e(5); and/or (3) utilizing false and deceptive practices, in violation of 15 U.S.C. § 1692e(10).

## II.     **The Class Action**

HBP is a law firm specializing in debt collection practices. According to the Class Action Complaint, MCM, Midland, and/or Encore generally outsourced their debt collection obligations to HBP once it appeared that a debtor was able to pay but was unwilling to do so. In seeking to collect on these debts, HBP utilized a demand letter ("HBP Collection Letter") that, in relevant part, notified consumers that, "[i]f you notify us within 30 days of your receipt of this letter of a dispute, we will send you verification of the debt." In the Class Action, Samples and Brown, on behalf of themselves and others similarly situated, allege that the HBP Collection Letter facially violates 15 U.S.C. § 1692g(a)(4) by failing to state that consumers must notify HBP of a dispute *in writing* to obtain verification of the debt.

With respect to Samples, Samples received the allegedly non-compliant HBP Collection Letter from HBP on September 30, 2010. In that letter, HBP apparently sought to collect from Samples the same alleged debt that is at issue in the instant case.[1]

---

[1]Although not explicitly stated by the parties here, the court infers that (1) Samples did not pay the alleged debt after receiving the MCM Collection Letter in June 2010; and (2) at some point, MCM, Midland, and/or Encore outsourced their right(s) to service collection of Samples'

4

### III.    Procedural History

The defendants have filed a Motion to Transfer Venue, contending that, in light of alleged overlap with the claims at issue in the Class Action, the court should transfer this matter to the Western District of Tennessee.  The defendants have also filed a Motion for Judgment, arguing that the MCM Collection Letter does not violate §§ 1692e(3), 1692e(5), and 1692e(10).

Furthermore, in her Response to the Motion for Judgment, Samples requests that, if the court retains the case and finds that one or more of the claims must be dismissed as pleaded, she be permitted to amend her Complaint pursuant to Rule 15(a) "in the interest of justice and harmony with the Congressional purposes of the FDCPA."  (Docket No. 14 at p. 18-19.) Samples does not state what the nature of the amendments would be, nor has she attached a proposed Amended Complaint.  The defendants address Samples' request for leave to amend in their Reply (Docket No. 18 at p. 6), arguing that the request should be denied as futile.  Although Samples' Motion for Leave to Amend should have been filed as a separate motion, the defendants have not objected on any procedural basis and instead have addressed her request on the merits.  Therefore, the court will construe the relevant section of the Samples' Response (Docket No. 14 at pp. 18-19) as a conditional Motion for Leave to Amend.

### ANALYSIS

### I.    Motion to Transfer Venue

### A.    Applicable Law

As an initial matter, the Defendants argue that the court should transfer this matter to the Western District of Tennessee pursuant to the 28 U.S.C. § 1404(a) (2012).  Under § 1404(a),

_____

debt on that account to HBP, which thereafter sent Samples the HBP Collection Letter.

"[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought . . . ." *See Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Id.*[2] "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (internal quotations marks omitted).

In ruling on a motion to transfer venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice'." *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2002) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)); *Kerobo*, 285 F.3d at 537. The Sixth Circuit has suggested that relevant factors to consider include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th

---

[2]The parties appear to treat the doctrine of *forum non conveniens* as coextensive with the authority to transfer venue pursuant to § 1404(a). However, as the Supreme Court has made clear, § 1404 was intended to revise, not codify, the common law doctrine of *forum non conveniens*. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-54, 102 S. Ct. 252, 708 L. Ed. 2d 419 (1981); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 31-33, 75 S. Ct. 544, 99 L. Ed. 789 (1955) (holding that district court's discretion under § 1404(a) is broader than under the common law doctrine of *forum non conveniens*).

Cir. 2009).

Unless the balance of these factors weighs strongly in favor of the defendant seeking transfer, "the plaintiff's choice of forum should rarely be disturbed." *Id.* The burden is on the defendant to establish that a transfer is warranted. *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996) (citing *Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978)); *Pace Indus. Union-Mgmt. Pension Fund v. King Soopers, Inc.*, No. 3:11-cv-00148, 2011 WL 1481306, at *1 (M.D. Tenn. Apr. 18, 2011). The convenience of non-party witnesses "is often considered to be the most important factor when determining which forum is the most convenient. *King Soopers, Inc.*, 2011 WL 1481306, at *2.

### B.    Application

Here, the defendants argue that Samples' participation in the Class Action provides a sufficient basis to transfer venue. First, with limited explanation, the defendants contend that this case and the Class Action "are going to involve discovery of the same basic facts and issues," and that, therefore, it would be in the interest of judicial economy and convenience to transfer the matter to the same district as the Class Action. (Docket No. 20 at p. 2.) Second, the defendants also argue that, under the FDCPA, Samples is only entitled to recover a total $1,000 above actual damages shown for an FDCPA violation, creating a potential double-recovery issue.

The defendants' arguments largely do not address the relevant factors in a § 1404 analysis, which compellingly weigh against transfer. Aside from the existence of the Class Action, which in part concerns HBP's subsequent effort to collect on the same alleged debt that is at issue here, there is simply no connection between this lawsuit and the Western District of

Tennessee: the plaintiff resides in this judicial district; the plaintiff received the allegedly defective MCM Collection Letter in this district; the defendants have not identified any witnesses or records located in the Western District of Tennessee; and the three defendants in this case are out-of-state companies that do not maintain offices in this district or in the proposed transferee district. Moreover, as a general matter, a cause of action under the FDCPA arises where the plaintiff receives communications in violation of the FDCPA – here, within this judicial district. *See, e.g.*, *Lachman v. Bank of La. in New Orleans*, 510 F. Supp. 753, 760 (N.D. Ohio 1981); *Bailey v. Clegg, Brush & Assocs., Inc.*, No. 1:90-CV-2702-CAM, 1991 WL 143461 (N.D. Ga. June 14, 1991); *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992); *Colbert v. United Recovery Sys., LP*, No. 3:09CV425, 2009 WL 2243790, at *3 (N.D. Ohio July 27, 2009).

The defendants' conclusory argument that this matter involves "the same" factual and legal issues as the Class Action is unpersuasive. This case is an individual action by a single plaintiff, that has as the single issue whether the MCM Collection Letter violates three particular FDCPA provisions: §§ 1692e(3), 1692e(5), and 1692e(10). By contrast, the Class Action concerns whether the HBP Collection Letter, sent at a later stage in the debt collection process relative to a host of putative class plaintiffs, facially violates the "in writing" requirement specified in § 1692g, and whether MCM, Midland Funding, and/or Encore may be held vicariously liable for HBP's conduct. Although this lawsuit and, in part, the Class Action (only to the extent it relates specifically to Samples) concern the same underlying alleged debt by Samples, the claims in each case are legally distinct. Furthermore, the defendants have not identified any specific factual overlap between the two cases. Of course, to the extent that

discovery in one case is relevant to the other proceeding, the parties could utilize typical means for avoiding duplication, such as by cross-designating depositions, limiting deposition testimony to issues not already addressed in the previous proceeding, and/or by re-producing relevant records.[3]  At any rate, these considerations do not compel transfer of this case to a judicial district that otherwise has no connection to Samples' underlying cause of action.

The issues of whether and to what extent Samples may recover statutory damages both here and in the Class Action present difficult legal questions.  15 U.S.C. § 1692k provides as follows:

(a) Amount of damages

Except as otherwise provided . . . . , a debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

(1)     any actual damages sustained by such person as a result of such failure;

(2)(A)  *in the case of any action by any individual*, *such additional damages as the court may allow*, but *not exceeding $1,000*; or

(B)     in the case of a class, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . .

*Id.* (emphasis added).  Samples argues that, pursuant to 15 U.S.C. § 1692k(a)(2)(A), she is entitled to collect $1,000 *per defendant* in *each action*.  That is, she believes she can collect (1) $3,000 in this action – reflecting $1,000 each from MCM, Midland Funding, and Encore relative to the alleged MCM Collection Letter violations; and (2) an additional $4,000 in the Class

_____

[3]The court notes that Samples is represented by the same counsel in both cases.

Action – reflecting $1,000 each from MCM, Midland Funding, and Encore (again), and $1,000 from HBP relative to the alleged HBP Collection Letter violations. By contrast, the defendants, with little explanation, contend that Samples is limited to $1,000 *total* across the two actions. The court infers that the defendants must be interpreting § 1692k as (1) limiting a particular plaintiff to $1,000 total recovery in an action, without regard to the number of liable defendants; and (2) containing an implicit assumption that independent violations by multiple debt collectors at different stages in the debt collection process (on the same debt) constitute a single "action" for FDCPA purposes, which Samples has attempted to skirt by filing two separate causes of action.

It does not appear that the Sixth Circuit has addressed these disputed issues, and federal courts outside of the Sixth Circuit have reached conflicting conclusions about the meaning of § 1692k(a)(2)(A) when multiple defendants are liable to a particular plaintiff under the FDCPA. Some courts have found that multiple defendants are each independently liable to a prevailing plaintiff for $1,000 in statutory damages, *see Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y. 2008), while others have found that a prevailing plaintiff's statutory damages recovery is capped at $1,000 total in the action, for which the liable defendants are jointly and several liable. *See Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992). Moreover, the parties here have not identified any case law addressing the posture presented by this case, in which a debt collector sent a letter that allegedly violates certain FDCPA provisions concerning false or deceptive practices, after which a different debt collector sent a letter to that same consumer on the same debt that allegedly violates a different and distinct FDCPA disclosure requirement.

The court need not resolve these unsettled issues at this early stage, particularly in the context of a motion to transfer venue. First, if Samples' claims concerning the MCM Collection Letter or the HBP Collection Letter were to fail on the merits, there would be no possibility of double recovery in the first place, thereby mooting these issues. Second, even if the MCM Collection Letter and the HBP Collection Letter violated the FDCPA, it may be that only certain defendants – and not others – are liable for those violations, which again could also moot these issues, at least in part. Third, the parties have not fully briefed these damages issues, on which they have not identified any controlling legal authority. Fourth, even if Samples prevails on liability in both actions against all defendants, the defendants in whichever court grants a damages award to Samples first could argue to the other court that the judgment has preclusive effect, at which point the parties would have the opportunity to fully brief these issues. Finally, it is worth noting that, if the Western District of Tennessee were to certify a class in the Class Action, Samples' potentially recoverable damages in the Class Action would represent only a small fraction of the total damages at issue. Again, none of these considerations, some or all of which may ultimately be mooted, warrant transferring the matter to a district that has no factual connection to this case and that presents no demonstrable inconvenience to the parties or third-party witnesses.

In sum, the court finds that the defendants have not met their burden to show that the court should disturb Samples' reasonable choice of venue in this district. Accordingly, the court will address the defendants' dispositive motion.

## II.      Motion for Judgment

### A.      Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) applies the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Johnson v. Bredesen*, 579 F. Supp. 2d 1044, 1049 (M.D. Tenn. 2008) (citing *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)). In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).[4]

**B.     FDCPA**

1.     Overview

The FDCPA prohibits a debt collector from utilizing "any false, deceptive, or misleading representation or means" to collect a debt.  15 U.S.C. § 1692e.  The FDCPA enumerates a number of categories of false or deceptive practices, including the following:

(3)     The false representation or implication that any individual is an attorney or that any communication is from an attorney.

. . .

(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(10)     The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Here, Samples alleges that the MCM Collection Letter violates each of these three prohibitions.

The Sixth Circuit has adopted the "least sophisticated consumer" standard for evaluating whether a defendant has committed a false or deceptive practice in violation of § 1692e. *Wallace v. Washington Mut. Bank, F.A.*, — F.3d —, No. 10-3694, 2012 WL 2379664, at *3 (6th Cir. June 26, 2012) (recommended for publication); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).  "The least-sophisticated-consumer test is objective and is

_____

[4]The parties reference and rely on the MCM Collection Letter in their submissions. Because that letter was attached to Samples' Complaint, it is considered part of the pleadings and, therefore, is properly considered in the context of a motion for failure to state a claim.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

designed 'to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.'"

*Kistner*, 518 F.3d at 438 (quoting *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509

(6th Cir. 2007)). "Although this standard protects naive consumers, it also prevents liability for

bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

reasonableness and presuming a basic level of understanding and willingness to read with care."

*Id.* (quoting *Lamar*, 503 F.3d at 509-510) (internal quotation marks omitted).

In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the

"more than one reasonable interpretation standard." *Kistner*, 518 F.3d at 441. Under that

approach, a collection letter can be "deceptive" if it is open to "more than one reasonable

interpretation, at least one of which is inaccurate." *Id.* (quoting *Clomon v. Jackson*, 988 F.2d

1314, 1319 (2d Cir. 1993)). "[T]he 'more than one reasonable interpretation' standard is

applicable to the entirety of § 1692e as a useful tool in analyzing the least sophisticated

consumer test." *Id.* Therefore, where a letter could be susceptible to more than one reasonable

interpretation and one of these interpretations is inaccurate, there is a question of fact for the jury

to decide. *Id.* (reversing district court's grant of summary judgment to defendant, because "[a]

genuine issue of material fact exists as to whether one can reasonably conclude, under the 'least

sophisticated consumer' test, that the collection letter addressed to Kistner is susceptible to a

belief that it is from an attorney.")[5] The Sixth Circuit has also held that a statement "must be

---

[5]There appears to be a split of authority among the circuit courts as to whether, when the facts of a particular debt collection communication are not disputed, the issue necessarily presents only a pure question of law for the court or can involve a question of fact for the jury. *See* Christian Steuben, *Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act*, 78 Fordham L. Rev. 3107, at 3135-3149 (2010) (discussing circuit split and collecting cases). The Sixth Circuit is among those circuits holding that, under appropriate circumstances, whether a practice violates § 1692e may implicate a genuine dispute

*materially* false or misleading to violate Section 1692e." *Wallace*, No. 10-3694, at 5 (citing

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009)) (emphasis in

original). "The materiality standard simply means that in addition to being technically false, a

statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.*

      1.     <u>§ 1692e(3)</u>

15 U.S.C. § 1692e(3) prohibits a debt collector from "false[ly] represen[ting] or

impl[ying] that any individual is an attorney or that any communication is from an attorney."

Thus, this prohibition relates to two types of conduct: (1) a situation in which a non-attorney

debt collector poses as an attorney, typically in an effort to intimidate a consumer into paying off

an alleged debt; or (2) a situation in which a debt collector creates the false impression that a

communication is "from" an attorney who has professionally evaluated the debtor's alleged

obligations, when in fact no such review occurred. *See, e.g.*, *Kistner*, 518 F.3d at 438-441; *FTC*

*v. Check Investors, Inc.*, 502 F.3d 159, 163 (3d Cir. 2007); *Nielson v. Dickerson*, 307 F.3d 623,

627 (7th Cir. 2002); *Boyd v. Wexler*, 275 F.3d 642, 644 (7th Cir. 2001); *Taylor v. Perrin,*

*Landry, deLauney & Durand*, 103 F.3d 1232. 1238 (5th Cir. 1997); *Crossley v. Lieberman*, 868

F.2d 566, 570 (3d Cir. 1989); *Clomon*, 988 F.2d at 1321.[6]

---

of material fact that a jury must decide.

    [6]For example, as explained in *Boyd*:

> A lawyer who merely rents his letterhead to a collection agency violates the
> [FDCPA], for in such case the lawyer is allowing the collection agency to
> impersonate him. The significance of such impersonation is that a debtor who
> receives a dunning letter signed by a lawyer will think that a lawyer reviewed the
> claim and determined that it had at least colorable merit; so if no lawyer did
> review the claim, the debtor will have been deceived and the purpose of the Act
> therefore thwarted. Similarly, a lawyer who, like [defendant] Wexler, is a debt

The cases cited by the parties relating to violations of § 1692e(3) each involve egregious forms of misleading conduct by debt collectors or a communication that is considerably more ambiguous than that presented here. For example, in *Taylor*, a law firm ("PLdD") prepared a form demand letter under its own letterhead, with a facsimile attorney signature that it provided to debt collector USI for use in USI's debt collection services. When a debt serviced by USI remained unpaid, USI's computer program would auto-populate the fields in the "signed" PLdD letter and send it to the consumer, without any involvement by PLdD in reviewing the case file. The Fifth Circuit found that this practice violated §1692e(3), because USI had utilized the letterhead and facsimile signature of a lawyer who was not actually participating in the collection process. *Id.* at 1238.

Similarly, in *Kistner*, the Sixth Circuit found that there was a question of fact for the jury as to whether a communication created the deceptive impression that it was "from" an attorney. 518 F.3d at 441. There, the defendant attorney operated a law firm practice and a separate debt collection company *not* in his role as an attorney. *Id.* at 434. The debt collection company mailed to the plaintiff a collection letter printed on law firm letterhead and requesting payment to "The Law Offices of Michael P. Margelefsky, LLC." *Id.* However, in the signature block, the letter stated that it was from an "Account Representative," not an attorney. *Id.* Under these circumstances, the Sixth Circuit concluded that the letter could be susceptible to a reasonable

collector, violates section 1692e(3) (and also section 1692e(10) . . . ) if he sends a dunning letter that he has not reviewed, since his lawyer's letterhead then falsely implies that he has reviewed the creditor's claim. A debt collection letter on an attorney's letterhead conveys authority and credibility.

275 F.3d at 644 (internal citations and quotations omitted).

interpretation that it was "from" an attorney who was involved in sending the letter – when in fact it was not – and remanded the case for trial as to "whether one can reasonably conclude, under the 'least-sophisticated-consumer' test, that the collection letter addressed to [the plaintiff] is susceptible to a belief that it is from an attorney." *Id.* at 441.

*Kistner* also cites to *Rumpler v. Phillips & Cohen Assocs. Ltd.*, 219 F. Supp. 2d 251 (E.D.N.Y. 2002), as an example of circumstances in which a debt collection communication is not susceptible to a reasonable belief that it was "from" an attorney who had reviewed the case file in his legal capacity. *See Kistner*, 518 F.3d at 439-441 (discussing *Rumpler*). In *Rumpler*, the letter at issue was on the company letterhead of Phillips & Cohen Associates (not a law firm) and bore a signature line reading "Adam S. Cohen, Esq., Executive Vice President." 219 F. Supp. 2d at 253. Under the least-sophisticated-consumer test, the *Rumpler* court found that a consumer could not reasonably interpret the letter as having been issued by an attorney because "the Letter in this case is on P&C's letterhead, which nowhere states either 'Attorney at Law' or 'General Counsel', or gives any other indication that it came from an attorney or a law firm." *Kistner*, 518 F.3d at 439 (quoting *Rumpler*, 219 F. Supp. 2d at 257). The Sixth Circuit agreed with the *Rumpler* court's reasoning, stating that "the least sophisticated consumer looking at the letterhead in *Rumpler* would see no indication that the letter had been sent from a law firm." *Id.* The Sixth Circuit then distinguished the circumstances in *Rumpler*, where the district court appropriately had granted judgment in favor of the defendant, from the circumstances in *Kistner*, where "the letter from the [defendant] LLC, in contrast, gives repeated indications that it came from a law firm. Specifically, the words 'law offices' appear in the letterhead, the signature block, and on the remittance voucher." *Kistner*, 518 F.3d at 439.

Here, unlike *Kistner*, but like *Rumpler*, the MCM Collection Letter is not on attorney letterhead and does not contain an attorney signature or signature block referencing a law office, nor are there any representations in the letter that it was reviewed or approved by an attorney. Instead, the letter clearly states that it is being sent by the "Recovery Department" of "Midland Credit Management, Inc." It provides a link to an MCM website and, unlike the letter in *Kistner*, requests payment to MCM specifically, not a law office. Although the letter does reference the word "attorney" several times, those references plainly state that MCL had not yet involved an attorney to further its debt collection efforts. For example, the boxed statement on the right hand side of the letter states that "this may be your last chance to work with us *before* the matter goes to an attorney." (Emphasis added). Similarly, the text of the letter states that MCM "is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding *will not occur* until *after* the expiration of the time period described on the back of [this] letter." (Emphases added). None of these statements explicitly or implicitly conveys the impression that the letter was sent from an attorney or that an attorney was meaningfully involved, at that point, in collection of the alleged debt from Samples. These circumstances are even more compelling than those presented in *Rumpler*, where, according to the Sixth Circuit, the district court appropriately found that the debt collection letter at issue did not violate § 1692e(3).

Thus, the court finds that the MCM Collection Letter is not susceptible to a reasonable interpretation by the least sophisticated consumer that it was "from" an attorney in violation of § 1692e(3). Therefore, this claim will be dismissed.

2. § 1692e(5)

Under § 1692e(5), "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" is an unlawful practice. Thus, a violation of § 1692e(5) requires two elements: (1) a threat to take an action against the consumer; and (2) a showing that (a) the action cannot legally be taken or (b) a showing that the debt collector did not actually intend to undertake the threatened action. *See Larsen v. JBC Legal Grp., P.C.*, 533 Supp. 2d 290, 302 (E.D.N.Y. 2008) (citing *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993)). This provision is designed to prevent "empty threats of litigation as a means of scaring the debtor into payment." *Jenkins v. Union Corp.*, 999 F. Supp. 1120 (N.D. Ill. 1998); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) ("[I]t would be deceptive under the FDCPA for [defendant] to assert that it *could* take an action that it had no intention of taking and has never or very rarely taken before.")[7]

---

[7]The Federal Trade Commission Commentary ("FTC") to § 1692e(5) states as follows:

A debt collector may not state or imply that he or any third party may take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken. *A debt collector may state that certain action is possible, if it is true such action is legal and is frequently taken by the collector or creditor with respect to similar debts*; however, *if the debt collector has reason to know that there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.*

[§ 1692e(5)] refers not only to a false threat of legal action, but also a false threat by a debt collector that he will report a debt to a credit bureau, assess a collection fee, or undertake any other action if the debt is not paid. A debt collector may also not misrepresent the imminence of such action. A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception. For example, *reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action.*

Statement of General Policy or Interpretation: Staff Commentary on the Fair Debt Collection

Here, Samples alleges that, in the MCM Collection Letter, MCM threatened to take legal action against her if she did not pay her alleged debt within 30 days, but MCM had no actual intention to do so. Essentially, she argues that MCM's purported "pre-legal review," as expressed in the MCM Collection Letter, constituted an empty threat of legal action to scare her into paying the alleged debt.

        (a)      Whether the MCM Collection Letter Includes a "Threat"

The parties have not identified any Sixth Circuit authority concerning what types of representations constitute a "threat" of legal action, although courts in other circuits have reached a variety of conflicting conclusions as to whether references to "possible" litigation (or something to that effect) can constitute a deceptive practice under appropriate circumstances.[8]

---

Practices Act, 53 Fed. Reg. 50097-02 (Dec. 13, 1998), at 50106 (emphases added). In *Brown*, a Third Circuit case cited approvingly by the Sixth Circuit in *Kistner*, the court found the FTC Commentary to be persuasive, even though it lacks the force of law. *Brown*, 464 F.3d at 455-56; *see also Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1372 n.2d (11th Cir. 1998) (noting that, "although the FTC's construction of the FDCPA is not binding on the courts, because the FTC is entrusted with administering the FDCPA, its interpretation should be accorded considerable weight.") (citing *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S. Ct. 2778, 2782-83, 81 L. Ed. 694 (1984)).

[8]Several circuits and district courts have found that references to possible future litigation can constitute an actionable threat under § 1692e(5) and/or § 1692e(10). *See, e.g., Baker v. G.C. Servs. Corp.*, 677 F.3d 775, 778-79 (9th Cir. 1982) (debt collector violated § 1692e(5), where letter stated that "[i]t is our policy to attempt to settle these matters out of court before making any decision whether to refer them to an attorney for collection . . . . Unless we receive your check or money order, we will proceed with collection procedures."); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25-26 (2d Cir. 1989) (debt collector violated § 1692e(5), where letter stated, without actual intention to refer matter to an attorney, that "Notice is Hereby Given That This Item Has Already Been Referred for Collection Action," "We Will At Any Time After 48 Hours Take Action as Necessary and Appropriate To Secure Payment In Full"; and "Pay This Amount Now If Action Is To Be Stopped," because "the clear import of the language, taken as a whole, is that *some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment") (emphasis in original); *Brown,* 464 F.3d at 444-455 ("It would be deceptive under the FDCPA for [the defendant] to assert that it *could* take

However, in *Kistner*, the Sixth Circuit approvingly cited the Third Circuit decision in *Brown*, in which the Third Circuit held that there was a triable issue as to whether the debt collector violated the FDCPA.  *See Kistner*, 518 F.3d at 441 (citing *Brown*, 464 F.3d at 455).  In *Brown*, the letter at issue stated as follows:

> You are requested to contact the Recovery Unit of the Card Service Center . . . to discuss your account.
>
> Refusal to cooperate could result in a legal suit being filed for collection of the account.
>
> You now have five (5) days to make arrangements for payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts.

Based on these representations, the Third Circuit found as follows:

> Upon reading the letter, the least sophisticated debtor might get the impression that litigation or referral to a CSC lawyer would be imminent if he or she did not respond within five days.  We do not believe that such as a reading would be bizarre or idiosyncratic, and we thus conclude that further proceedings are warranted to determine if such a reading is 'reasonable' in light of the facts of this case.  If Brown can prove, after discovery [,] that CSC seldom litigated or referred

---

an action that it had no intention of taking and has never or rarely taken before.") (emphasis in original).

Other circuits and district courts have found that conditional language stating that litigation is merely a possible outcome of failure to pay cannot constitute a violation of § 1692e(5).  *See, e.g.*, *Jenkins*, 999 F. Supp. at 1136 ("For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made."); *Adams v. J.C. Christensen & Assocs., Inc.*, 777 F. Supp. 2d 1193, 1197 (D. Minn. 2011) (debt collector did not violate § 1692e(5), where letter stated that account "would be forwarded to an Attorney's office" and that, with payment, defendant "would suspend forwarding this account to an attorney."); *Madura v. Lakebridge Condo Ass'n, Inc.*, 382 Fed. App'x 862, 865 n.2 (11th Cir. 2010) ("Just indicating that a matter may be referred to an attorney . . . if payment is not made, is not a deceptive practice . . . ."); *Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1249 (S.D. Ala. June 20, 2008) ("Merely advising the debtor of the agency's options with which to pursue the debt is the sort of truism that is legally insufficient to violate § 1692e.")

debts such as Brown's and those of the putative class members to an attorney, a jury could conclude that the CSC Letter was deceptive or misleading *vis-a-vis* the least sophisticated debtor."[9]

Also, the parties have identified two recent unpublished district court decisions from outside the Sixth Circuit concerning debt collection letters sent by MCM, in which the courts reached conflicting conclusions about whether the letters in questions violated one or more prohibitions in § 1692e, including § 1692e(5). *See Gifford v. Midland Credit Mgmt., Inc.*, No. CV 10-8040 CAS (JCGx), 2011 WL 3476803 (C.D. Cal. Aug. 8, 2011) (finding that MCM debt collection letter violated § 1692e(5)); *Ruiz v. Midland Credit Mgmt., Inc.*, No. 2:11-CV-32, 2012 WL 33016 (N.D. Ind. Jan. 6, 2012) (finding that MCM debt collection letter did not violate § 1692e(5)).

In *Gifford*, the court considered an MCM debt collection letter that stated as follows: "MCM is considering forwarding this account to an attorney *with the intent to initiate legal action* to satisfy the debt . . . . If we don't hear from you or receive payment by 08-03-2010, we may proceed with forwarding this action to an attorney." 2011 WL 3476803, at *2 (emphasis added). The only relevant difference between the letter at issue in *Giffords* and the MCM Collection Letter at issue here is that the letter in *Giffords* utilizes the phrase "to an attorney with the intent to initiate legal action," rather than "to an attorney in your state for possible litigation,"

_____

[9]In *Brown*, the Third Circuit stated that, although it "express[es] no opinion as to whether the language of the letter constitutes a 'threat' under § 1692e(5), we believe that the facts as alleged in Brown's complaint, if proven, could render the CSC Letter a 'deceptive' or 'misleading' communication, in violation of § 1692e." 464 F.3d at 455. Thus, it is not entirely clear whether *Brown* held that there was a triable issue under § 1692e(5) specifically – the provision apparently at issue on appeal – as opposed to § 1692e(10) or § 1692's general proscription against "deceptive" practices. At any rate, the court found that it was inappropriate to dismiss the plaintiff's claims without further discovery.

as here.  (*See Giffords* Docket No. 1 (Complaint) at p. 12.)  The *Giffords* court found as follows:

> [A] reasonable jury might determine that the letter at issue was a 'deceptive' or
> 'misleading' communication in violation of § 1692e . . . .  The Court finds that the
> language in the letter at issue herein is more suggestive of imminent litigation
> than the language considered in some of the other cases referred to by defendant .
> . . . in this case, the language of the letter indicates that defendant represented that
> it was considering 'forwarding this account to an attorney *with the intent to
> initiate legal action* to satisfy the debt.'  The Court concludes that, viewing the
> letter as a whole, a reasonable jury could determine that it created the impression
> that legal action by a defendant is a real possibility, and that therefore, that it was
> a threat to take such action that defendant did not inten[d] to take.

2011 WL 3476803, at *3 (emphasis in original) (internal quotations and citations omitted).

In *Ruiz*, the district court also considered a collection letter from MCM containing

substantially similar language to that presented here.  The letter at issue in *Ruiz* stated, as here,

that: "we are considering forwarding this account to an attorney in your state for possible

litigation"; "[i]f we don't hear from you or receive payment by 11-20-2010, we may proceed

with forwarding this account to an attorney"; "[t]his may be your last chance to work with us

before the account goes to an attorney."  (*See Ruiz* Docket No. 1, Ex. 1.)  However, unlike the

MCM Collection Letter at issue here, the letter at issue in *Ruiz* did not contain a statement that

"such forwarding will not occur until after the expiration of the time period described on the

back of [this] letter."  The court in *Ruiz*, applying the "unsophisticated consumer" standard

applicable in the Seventh Circuit, found that "[t]his letter would not make an unsophisticated

consumer believe that a decision to pursue legal action is either imminent or has already been

made."  2012 WL 33016, at *3.  The *Ruiz* court purported to distinguish *Gifford* on two grounds:

(1) the letter in *Gifford* stated that MCM was considering forwarding the account to an attorney

"with the intent to initiate legal action"; and (2) the Ninth Circuit utilizes the "least sophisticated

debtor" test, rather than the unsophisticated consumer test applicable within the Seventh Circuit.

23

Both *Gifford* and *Ruiz* are decisions with limited persuasive weight, given that they are unpublished district court decisions from outside the Sixth Circuit. Furthermore, the MCM Collection Letter differs in potentially important ways from the letters at issue in *Gifford* and *Ruiz*. For example, unlike the letter at issue in *Gifford*, the MCM Collection Letter omits the phrase "with the intent to initiate legal action", which the *Gifford* court relied upon as establishing a sufficient "threat" of legal action to create a triable question, but includes additional language not at issue in *Giffords*. Similarly, although the letter at issue in *Ruiz* omitted the "intent to initiate legal action" language (as with the letter at issue here), that letter also omitted the arguably suggestive language in the MCM Collection Letter that forwarding the matter to an attorney "will not occur" if the consumer pays within 30 days of receipt of the letter. Thus, even to the extent that *Gifford* and *Ruiz* may be afforded limited persuasive weight, neither case involved the precise letter at issue here, which must be interpreted as a whole.

Having examined the language of MCM Collection Letter, the court finds that, although it is a close question, the letter could be subject to more than one reasonable interpretation for purposes of § 1692e(5). The letter invokes the possibility of forwarding the matter to an attorney several times, presumably in an effort to encourage Samples to pay the alleged debt promptly. The letter states that MCM itself is "considering forward this account to an attorney in your state for possible litigation," which reasonably could be susceptible to a belief by the least sophisticated consumer that the letter threatens legal proceedings in the event of non-payment within the 30-day window set forth therein. Similarly, the least sophisticated consumer could reasonably interpret the statement that "such forwarding will not occur until after the expiration of the time period described on the back of [this] letter" as implying that forwarding to an

attorney *would* occur in the event of non-payment. The court is not persuaded by the *Ruiz* court's reasoning – and the defendant's argument here – that omitting the phrase "with the intent to initiate legal action" is dispositive of the issue.[10]

This court's interpretation is consistent with the reasoning of the Sixth Circuit decision in *Kistner*, the Third Circuit decision in *Brown* that the Sixth Circuit cited approvingly in *Kistner*, and the FTC Staff Commentary, which the court finds persuasive under the circumstances presented here. *See also Rivera v. Amalgamated Debt Collection Servs., Inc.*, 462 F. Supp. 2d 1223, 1230 (S.D. Fla. 2006) (rejecting defendant's argument that use of term "consider" in challenged language showed that legal action was not imminent, because, "where parties reasonably disagree about the language in debt collection letters, the trier of fact must resolve the disagreement rather than the court") (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)).

Thus, interpreting the alleged facts in the light most favorable to MCM, the court finds that the MCM Collection Letter could be subject to more than one reasonable interpretation, including a threat of potential legal action, which could constitute a violation of § 1692e(5), if the defendants did not actually intend to take that threatened action.

        (b)      Whether the Defendants Did Not Intend to Take the Threatened Action.

If the MCM Collection Letter incorporates a potentially actionable threat, discovery is

---

[10]Furthermore, the *Ruiz* court did not explain why the application of the "least sophisticated consumer" standard in *Giffords* provided a relevant basis to distinguish *Gifford* from the circumstances in *Ruiz*. *See Peter v. GC Servs., L.P.*, 310 F.3d 344, 348 n.1 (5th Cir. 2002) ("The difference between the standards is de minimis at most.")

required on the second element of the § 1692e(5), *i.e.*, whether the defendants[11] actually intended to undertake the threatened action at the time the letter was sent. *See Tsenes v. Trans-Continental Credit and Collection Corp.*, 892 F. Supp. 461, 465 (E.D.N.Y. 1995) (denying motion to dismiss § 1692e(5) claim and stating, "[a]t a later stage in the litigation, the plaintiff will have to substantiate its allegation and affirmatively show that the defendant did not intend to bring legal action.") Accordingly, the court will not dismiss Samples' claim that the defendants violated § 1692e(5). In reaching this holding, the court is not expressing any opinion regarding the merits of Samples' claims; the court merely finds that Samples has alleged sufficient facts to survive a motion for dismissal on the pleadings. *See Wallace*, 2012 WL 2379664, at *4.[12]

      3.    § 1692e(10)

Section 1692e(10) is essentially a catch-all provision, which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Samples does not independently identify additional "false" or "deceptive" representations in the MCM Collection Letter; instead, she simply incorporates into this claim her allegations relating to the alleged violations of §§ 1692e(3) and 1692e(5). Nevertheless, given that Samples has identified a number of allegedly false or misleading representations, the court will not dismiss the § 1692e(10) claim at this stage.

---

[11]For purposes of the Motion for Judgment, the parties have not drawn any distinctions among the potential liability of MCM, Midland Funding, and Encore relative to the MCM Collection Letter. If any such distinctions may be dispositive of Samples' claims relative to particular defendants, the defendants may raise those distinctions at an appropriate later stage.

[12]Of course, the fact that the defendants apparently did forward Samples' claim to a law firm (HBP) for further consideration would seem to cut against the merits of Samples' allegation that the MCM Collection Letter included an empty threat of potential legal action.

Indeed, many courts have found that, where dismissal of § 1692e(5) claim is not warranted, a § 1692e(10) claim also survives. *See, e.g.*, *Pipiles*, 886 F.2d at 25; *Bentley*, 6 F.3d at 62-63; *Larsen*, 533 F. Supp. 2d at 303; *Fainbrun v. Sw. Credit Sys., L.P.*, 246 F.R.D. 128, 132 (E.D.N.Y. 2007); *Bakewell v. Fed. Fin. Grp., Inc.*, Civil Action No. 1:04-CV-3538-JOF, 2007 WL 951764, at *4 (N.D. Ga. Mar. 28, 2007).

## III.    Motion For Leave to Amend The Complaint

Samples has requested leave to amend her Complaint to the extent the court determines that dismissal is appropriate on any claims as pled. However, Samples has not articulated what the nature of these amendments would be, let alone attached a proposed Amended Complaint.

The court has determined that dismissal of the § 1692e(3) claim is warranted because the MCM Collection Letter is not susceptible to a reasonable interpretation by the least sophisticated consumer that the letter comes "from" an attorney. The § 1692e(3) claim and the court's associated findings are predicated on the undisputed language of the MCM Collection Letter. Thus, further amendments to Samples' allegations would not change the court's holding. Accordingly, the court will dismiss the § 1692e(3) claim with prejudice and will deny Samples' request for leave to amend with prejudice as it relates to that claim. However, if Samples desires to amend her Complaint in any other respect, she may file a procedurally proper motion for leave to amend pursuant to Fed. R. Civ. P. 15(a) for the court's consideration.

## CONCLUSION

For the reasons stated herein, the defendants' Motion to Transfer Venue will be denied and the defendants' Motion for Judgment will be granted in part and denied in part. Samples' claim pursuant to § 1692e(3) will be dismissed with prejudice. Samples' request for leave to

amend her Complaint will be denied with prejudice as to the § 1692e(3) claim and denied without prejudice in all other respects.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge